IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 2:12-0232 |
| | ) | |
| | ) | |
| -versus- | ) | **RESPONSE IN** |
| | ) | **OPPOSITION TO** |
| | ) | **MOTIONS FOR** |
| **MARTIN BALLARD** | ) | **SEVERANCE** |
| **ANTHONY TERRENCE JERRY DAVIS** | ) | |

Defendants Ballard and Davis seek to sever the Indictment into two separate trials, one addressing the drug charges in Counts 1-4 and one addressing the attempted murder of a federal witness in Counts 5-10. *See* Dkt 1413 (Mar. 20, 2015); Dkt 1175 (Aug. 8, 2014). As the Indictment as whole reflects logically and factually interrelated charges addressing both the distribution of drugs and the obstruction of the prosecution of those drug charges by attempting to kill a putative witness on the drug charges, the Indictment should not be severed under Rules 8 or 14.

## I.    FACTUAL BACKGROUND

This investigation began after several informants identified Ivory Brothers as one of the major dealers of crack cocaine in Walterboro.  Agents thus utilized a confidential source to make controlled buys from Brothers before obtaining a federal wiretap on Brother's cell phone as well as phones utilized by co-

1

conspirators, including Martin Ballard. The investigation revealed that Ballard, who lived in Summerville, was Brothers' primary source of supply for cocaine.

Based on the information gathered, agents approached Brothers in January 2012 with a target letter, seeking to obtain his cooperation against his co-conspirators. As it related to Ballard, Brothers corroborated the intercepted calls and explained that Brothers purchased approximately 2-3 ounces of cocaine twice a week from Ballard during the preceding two years, an amount that approximated 14 ½ kilograms. The intercepted calls between Ballard and Brothers corroborate the information described by Brothers and revealed Ballard and Brothers discussing both cooking the cocaine into crack and the high quality of Ballard's cocaine (demonstrated by the fact the cocaine produced a sizable increase in weight when cooked into crack).

Based on the entirety of the information developed, Ballard, Brothers, and fourteen others were indicted by the federal Grand Jury on March 14, 2012. Shortly thereafter, Brothers was relased on bond and discovery was provided to defense counsel revealing that Brothers had already begun to cooperate.

Having learned of Brothers' cooperation, Ballard told others that the primary witness against him was Brothers and indicated that he, Ballard, had put money on Brothers' head for a hit. Consistent with his stated intent to have Brothers killed, Ballard began to organize a conspiracy to have Brothers shot, using the phones at

the county detention centers where he was incarcerated. Ballard made calls to various individuals, speaking in code, to orchestrate the hit on Brothers. Ballard's calls focused on Anthony Davis, using him to organize and plan the hit, including paying and coordinating with Harris, whom Ballard had contracted to kill Brothers.

The plan to kill Brothers was executed on June 6, 2013.  After Ballard called Davis, Davis then called Charles Sanders who in turn communicated with his cousin, Garrick Sanders.  Using contact information from Ballard communicated through Davis, Charles Sanders contacted Harris and drove his burgundy Lincoln to pick up Harris.  After picking up Harris, Charles Sanders drove Harris to Walterboro where they went to 98 Oswald Court in Walterboro.  At around 4:00pm, Charles Sanders and Harris saw Brothers arrive in his green Honda at 98 Oswald Court to visit his cousin (Bennett).  Bennett observed the burgundy Lincoln and noticed that it was being driven by Charles Sanders, who was known to Bennett.  Bennett also noticed another male in a black hat with a distinctive marking slumped down in the passenger seat.  Harris then got out of the car with two handguns provided by Charles Sanders – a .357 revolver and a .40 caliber semi-automatic.[1] Harris approached the trailer and shot through the glass front door, hitting Brothers on the couch between seven and ten times.

---

[1] Garrick Sanders has now turned over the guns to law enforcement, and told agents that the guns belonged to Charles Sanders.

At around 4:13pm, a business' surveillance video around the corner from Oswald Court captured the burgundy Lincoln fleeing the scene. At 4:13pm, 911 was called and Brothers and Bennett told the operator that the shooter was in a burgundy Lincoln. Brothers and Bennett also said that they knew the driver and later told the responding deputies that the driver was Charles Sanders.

After fleeing the scene, at 4:20pm, Charles Sanders called Garrick Sanders. This call was followed by a series of calls between the two cousins (at 4:27pm, 4:39pm, 4:40pm, 5:55pm, and 6:46pm) that led to Garrick Sanders retrieving Charles Sanders' handguns that Harris had used to shoot Brothers. The cell site information from these calls trace the movement of Charles and Garrick Sanders from Walterboro. After obtaining the guns, Garrick Sanders drove to Mount Pleasant to dispose of the guns by proving them to a truck driver. Charles Sanders, having gotten rid of the guns, drove Harris to North Charleston to drop him off.

By this time, police had put out an alert for the burgundy Lincoln driven by Charles Sanders. As he was returning home to the Cottageville area from dropping off Harris in North Charleston, Charles Sanders was intercepted by police alone in his burgundy Lincoln. The officers obtained Charles Sanders' phones and found in his car a .40 caliber round with a headstamp matching one of the spent rounds from the scene of the shooting. They also recovered Harris' fingerprint from the passenger door. Charles Sanders tested positive for GSR (Gun Shot Residue) on

his left palm and on the back of his left hand. Similar GSR was also found on the passenger side of the burgundy Lincoln where Harris had been.

## II.    FOURTH SUPERSEDING INDICTMENT

On November 12, 2014, the Grand Jury returned the Fourth Superseding Indictment charging four drug counts: drug conspiracy (Count 1), possession of a firearm in furtherance of drug trafficking (Count 2 & 4), possession with intent to distribute cocaine (Count 3). *See* Indictment (Dkt 1248). The Grand Jury also charged six counts arising from the attempted murder of Brothers as a federal witness: murder for hire conspiracy (Count 5), substantive murder for hire (Count 6), solicitation of murder for hire (Count 7), obstruction of justice (Counts 8-9), conspiracy firearm in furtherance of drug trafficking and a crime of violence (Count 10), and possession of a firearm in furtherance of drug trafficking (Count 11). *Id.*

The indictment charged in Count 1 a Section 846 drug conspiracy that alleged both (1) that Ballard was involved in the distribution of cocaine and crack cocaine (Count 1 as evidenced by Counts 2-4, alleging possession of a firearm in furtherance of drug trafficking and possession with the intent to distribute) and (2) that Ballard and Davis (among others) committed the overt acts charged in Counts 5-10 (all related to the attempted murder of a federal witness) in furtherance of the Section 846 conspiracy. *See* Indictment at 2 (Dkt 1248). In so charging, the

5

Indictment alleges that the Count 1 conspiracy involved both the distribution of narcotics and the attempt to avoid prosecution by killing a federal witness. Moreover, the obstruction counts (Counts 8-9) require the proof of the existence of the drug charges, and Counts 10-11 (conspiracy and substantive possession of a firearm in furtherance of a drug trafficking crime and crime of violence) require proof of the drug charges as the predicate criminal activity which the firearm was used to further.

### III.    ARGUMENT

#### A.    Rule 8 Authorized the Joinder of the Drug Charges (Counts 1-4) and the Attempted Murder Charges (Counts 5-10)

Rule 8 of the Federal Rules of Criminal Procedure authorizes the joinder of multiple counts against a defendant "if the offenses charged ... are [1] of the same or similar character, or [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). The Fourth Circuit has interpreted the latter two prongs of Rule 8(a) flexibly, requiring only that the joined offenses have a "logical relationship" to one another. *United States v. Cardwell*, 433 F. 3d 378, 385 (4th Cir. 2005) (noting that Rule 8(a) permits very broad joinder because of the efficiency in trying related counts in the same trial).

Here, the drug conspiracy (Count 1) included the agreement to distribute drugs and to attempt to prevent the testimony of Brothers concerning the drug activity. Similarly, the obstruction counts (Counts 8-9) allege the existence of the drug charges as the reason for the obstructive activity, and the firearm counts arising from the attempted murder (Counts 10-11) allege that the firearm was possessed in furtherance of both the drug conspiracy and a crime of violence. Thus, the Indictment demonstrates the logically relationship – indeed inter-relatedness – among the drug charges (Counts 1-4) and the attempted murder charges (Counts 1, 5-10).

As this Indictment charges a common scheme to deal drugs and escape liability for dealing drugs through obstruction and attempted murder, the counts should remained joined as part of a single trial. *See United States v. Chagra*, 754 F.2d 1186, 1188 (5th Cir. 1985) ("An indictment states a common scheme under Rule 8(a) when it alleges that a defendant has attempted to escape liability for one criminal offense through the commission of others."). The Fourth Circuit in *United States v. Hornsby*, 666 F.3d 296 (4th Cir. 2012), affirmed the joinder of witness tampering and obstruction counts with the underlying fraud counts because they were "related to the same series of events – the [defendant's] involvement with the [fraud] and the subsequent investigation [which resulted in the tampering and

obstruction counts]." *Id.* at 308-09.[2]  This interrelatedness – making the counts part of the same common scheme or plan – is illustrated by the Indictment's allegation that the attempted murder charges were overt acts of the drug conspiracy and that the drug charges are a part of the obstruction and firearm charges that arise from the attempted murder. *See United States v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002) ("Joinder of the murder-related charges and the drug conspiracy was proper under Rule 8(a) because Willis's murder was charged as an overt act of the conspiracy and, therefore, part of the same act or transaction constituting parts of a common scheme or plan.").

### B.    The Drug Charges Should not Be Severed from the Attempted Murder Charges under Rule 14

As joinder under Rule 8 is proper, the defendants can only claim that the charges should be severed under Rule 14, which presents a difficult standard met only if a single trial would prevent the jury from making a reliable judgment on guilt. *Cardwell*, 433 F. 3d 387; Fed. R. Crim. P. Rule 14(a) ("[i]f the joinder of offenses ... for trial appears to prejudice a defendant ..., the court may order

---

[2] *See also United States v. Balzano*, 916 F.2d 1273, 1280 (7th Cir. 1990) ("Because [the defendant's] intimidation of [the witness] was an attempt to prevent testimony concerning [the defendant's] criminal activities, and a conspiracy and its cover-up are parts of a common plan, there would be no possible problem of misjoinder ."); *United States v. Raineri*, 670 F.2d 702, 708 (7th Cir. 1982) (holding Travel Act violations properly joined with perjury and threatening witness counts); *United States v. Scott*, 659 F.2d 585, 589 (5th Cir. 1982) (tax counts properly joined with witness intimidation counts: "Scott's intimidation of Arrowood was an attempt to escape criminal liability for his conduct charged in the tax return counts. As a result, a direct relationship exists between the tax return counts and the witness intimidation count.").

separate trials of counts....”). Such cases, however, are rare. It is not enough for a defendant to show merely that severance offers him “a better chance of acquittal.” *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995). Rather, the Supreme Court has admonished that “when defendants properly have been joined under [Rule 8], a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would ... prevent the jury from making a reliable judgment about guilt or innocence.” *Zafiro v. United States*, 506 U.S. 534 (1993); *accord Harris*, 498 F.3d at 291-92. A defendant seeking severance pursuant to Rule 14 “has the burden of demonstrating a strong showing of prejudice.” *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008). A “conclusory assertion of unfairness” is insufficient to justify severance under Rule 14. *Id.; see also United States v. Collins*, 372 F.3d 629, 634 n.2 (4th Cir. 2004) (finding severance of coconspirator was properly denied where the defendant “utterly failed to establish that actual prejudice would result from a joint trial”).

Moreover, “the possibility of prejudice to a defendant from being charged with multiple counts is greatly diminished where the evidence of the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense.” *United States v. Cole*, 857 F.2d 971, 974 (4th Cir. 1988); *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976). Each of the defendants would be tried on the same evidence in both trials were the court to sever the drug charges from the

9

attempted murder of a witness charges. *Mir*, 525 F.3d at 357 (affirming denial of severance because "[t]rying the . . . charge[s] separately would have led to significant inconvenience for the government and its witnesses, and required a needless duplication of judicial effort in light of the legal, factual, and logistical relationship between the charges"). As the evidence of the joined crimes would be mutually admissible in severed trials, defendants cannot show sufficient prejudice to require severance under Rule 14.

As an initial matter, each defendant is charged in both the drug conspiracy counts and the attempted murder of a witness counts. In any trial of the drug trafficking charges (Counts 1 - 4), evidence of the attempted murder of a federal witness would be admissible as overt acts of the drug conspiracy, *cf. United States v. Melvin*, 2007 WL 2046735, at *13 (4th Cir. 2007) ("Evidence of acts committed pursuant to a conspiracy and offered to prove defendant's membership or participation in the conspiracy are not extrinsic evidence, *i.e.*, evidence of other acts, for purposes of Rule 404(b)."); *see also United States v. Palacios*, 677 F.3d 234, 245 (4th Cir. 2012), and as evidence of the consciousness of guilt, *see United States v. Hayden*, 85 F.3d 153, 159 (4th Cir. 1996) ("Evidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent"); *United States v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990) ("Courts have held that evidence of a defendant's attempts at intimidation of a witness or of a person

cooperating with a government investigation is admissible to demonstrate a defendant's "consciousness of guilt" of the charges which were the subject of the witness' testimony or cooperation.").

Similarly, in a trial on the counts addressing the attempted murder of a federal witness, evidence of the drug conspiracy would be admissible in to show that the victim was a federal witness (an element of Counts 8-9), that the firearms were possessed in furtherance of the drug conspiracy (an element of Counts 10-11), to complete the story of the attempted murder, and to illustrate motive for the attempted murder. *See United States v. Little Dog*, 398 F.3d 1032, 1037 (8th Cir. 2005) ("Little Dog's obstruction charge is connected to, and interrelated with the sexual abuse charges. If the district court had severed the charges, evidence of Little Dog's attempt to tamper with or influence witnesses would have been admissible in his sexual abuse trial to show criminal intent and state of mind. In a separate trial for obstruction, evidence of Little Dog's sexual abuse of MRL would be required to show his motive for seeking to influence Red Legs' sisters into giving false testimony about MRL.").[3]

---

[3] Defendants argue that they are prejudiced because the attempted murder charges are more inflammatory than the drug charges. Even a showing that the evidence on the attempted murder charges is more inflammatory and egregious does not create any right to a severance. *See, e.g.*, *United States v. Dinkins*, 691 F.3d 358, 368-69 (4th Cir. 2012) (approving joinder of different murders as part of a drug conspiracy); *United States v. Hall*, 93 F.3d 126, 131 (4th Cir. 1996). Regardless, as the evidence of the attempted murder would be admissible in a severed drug conspiracy charge, there is no prejudice resulting from a joint trial. *Cole*, 857 F.2d at 974.

\* \* \*

For the reasons discussed above, the charges of the Fourth Superseding Indictment should not be severed under Rules 8 or 14.

Respectfully Submitted,

WILLIAM N. NETTLES
UNITED STATES ATTORNEY

By: s/ *Jay N. Richardson*_____
Jay N. Richardson (#9823)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina, 29402

By: s/ *Sean Kittrell*_____
Sean Kittrell (#6032)
Assistant United States Attorney
Violent Crime Task Force
151 Meeting Street, Suite 200
Charleston, South Carolina, 29402

Charleston South Carolina
March 31, 2015