IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 2:12-0232 |
| | ) | |
| | ) | |
| -versus- | ) | **Government's Memorandum in** |
| | ) | **Support of the Guidelines Sentence and** |
| | ) | **Response to Defendant's Sentencing** |
| **MARTIN BALLARD** | ) | **Memorandum** |
| | ) | |
| | ) | |

The United States of America respectfully requests that the Court impose a Guideline sentence of life plus a consecutive 120 months. This severe punishment is fully justified for **Ballard**, who organized from jail an attempt to murder a federal cooperating witness who was set to testify against **Ballard** as the leader of a large-scale drug-trafficking organization. Although the hitman, Jimmy Harris, who **Ballard** hired to kill the cooperating witness, shot the cooperator ten times and resulted in life-changing injuries, the cooperator lived. Anything less than a life sentence would fail to reflect the seriousness of **Ballard's** offenses, to protect the public from Ballard, and to account for the leadership role **Ballard** played in both a large-scale drug organization and this horrific attack on the judicial system itself. Thus, the Government respectfully requests that this Court sentence **Ballard** to the sentence recommended under the United States Sentencing Guidelines as is provided for in the Presentence Report.

The sentencing guideline calculation properly takes into consideration full array of aggravating circumstances and a life sentence is warranted under the objectives set forth in 18 U.S.C. § 3553(a)(2). Without fully detailing each aspect, the Government asks the Court to consider the following under Section 3553:

    a.    18 U.S.C. § 3553(a)(2)(A): (The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment). **Ballard**, a major drug trafficker charged in federal court for his crimes, coordinated an attempt to murder a federal witness in an effort to derail the case against him. In addition to coordinating others to assist in the murder plot, **Ballard** hired Jimmie Harris as the hitman, who shot the cooperating victim ten times with two handguns. In doing so, **Ballard** attempted to commit one the most serious crimes imaginable, attacking not only the victim but directly targeting the judicial and law enforcement system itself. This coordinated attack threatens the very heart of justice as testimony forms the basis of determining truth and ascertaining guilt. This was a brazen and targeted attack orchestrated by Ballard from a jail. The attack resulted in life-changing wounds to the victim's neck, chest, abdomen and thigh. After spending time in intensive care, he continues to have permanent and life-threatening injuries, with a bullet still lodged in his neck. The sentence as suggested by the PSR is appropriate as it provides just punishment. Additionally, it is a necessary sentence, in order to both promote respect for the law and to reflect the seriousness of the offense.

b. 18 U.S.C. § 3553(a)(2)(B): (The need for the sentence imposed to afford adequate deterrence to criminal conduct). This is a general deterrence provision. *See United States v. Shortt*, 485 F.3d 243 (4th Cir. 2007). Potential criminals are deterred from specific types of crimes based on their fear of certain and predicable punishment. Because this was a case involving obstruction of justice through a violent and vicious attempt to eliminate a federal witness by killing him, it is appropriate to impose a substantial sentence to act as a deterrent for others who may wish to protect themselves from prosecution and sentencing. In the Charleston area, the increasing trend to threaten to witnesses is a very dangerous trend, which requires a strong message to deter future defendants. Thus, an appropriate sentence in this case is very important to provide a message to deter those who would corruptly attack the justice system by attacking and intimidating witnesses.

c. 18 U.S.C. § 3553(a)(2)(C): (The need for the sentence imposed to protect the public from further crimes of the defendant). This provision addresses the concept of specific deterrence. This case itself shows that **Ballard** is incorrigible. While in custody pending trial, **Ballard** orchestrated this hit on the main witness against him. As illustrated by his actions, **Ballard** requires restrictive incarceration to protect the public.

d. 18 U.S.C. § 3553(a)(6): (The need for the sentence imposed to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and to avoid unwarranted disparities among co-defendants in a particular case – *see United States v. Fria*s, 521 F.3d 229 (2d Cir. 2008) (not improper for district court to consider similarities and differences among co-defendants when imposing a sentence); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) (district courts can align codefendants' sentences in order to reflect comparable degrees of culpability)). **Ballard's** own actions are not comparable in terms of his leadership, organization, and instigation of these

        criminal actions. However, even less culpable individuals convicted of their involvement in such an attack on the judicial system have received significant sentences. Most closely, **Ballard's** hired hitman, Jimmie Harris, was sentenced to a term of imprisonment of 550 months. This lengthy sentence was appropriate for Harris, as the blunt instrument **Ballard** attempted to use to destroy evidence by killing Ivory Brothers. Yet, unlike **Ballard**, Harris pled guilty, accepted responsibility, was not a leader or organizer, and was not involved in the original drug trafficking conspiracy. In other words, he was an underling of **Ballard** used by him, and he received a significant and substantial sentence. To properly account for **Ballard's** role in the attempted murder and his drug trafficking, a life sentence consecutive to 120 months is appropriate for **Ballard**.

e.    18 U.S.C. §3553(a)(1) (the nature and circumstances of the offense and the characteristics of the Defendant). Under this provision, a substantial sentence is appropriate, based on the discussion above. The outlined facts above, and the PSR, show the seriousness of the crimes he was convicted of committing. In fact, his record a trend of increasing dangerousness, progressing from threats to obstruct justice to an attempt to murder a witness. This trend supports a life sentence. *See United States v. Seay*, 553 F.3d 732 (4th Cir. 2009) (affirming upward variance based in part on the need to protect the public from further crimes of the defendant and his increasing dangerousness).

f.    It is also important to protect the public from further crimes of the defendant (specific deterrence) (§3553(a)(2)(C). In this case, it is apparent that **Ballard** has been both violent and dangerous and has been living a criminal lifestyle. The fact that he attempted to kill the main witness against him shows that he needs to be incarcerated and shows that he is an individual with deep seated criminal tendencies.

g.    Other factors also illustrate the fact that the recommended Guidelines sentence of life is appropriate. For instance, § 5K2.2 provides for an increase above the authorized guideline range if significant physical injury resulted. The extent of the increase depends on "the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked." Here, the man hired by **Ballard** to murder Ivory Brothers used two guns. One was a .357 revolver and the other was a .40 caliber semi-automatic. Brothers, sitting on the couch in a trailer in Walterboro, was shot between seven and eleven times which resulted in wounds to his neck, chest, abdomen and thigh. He lived, suffered greatly and was in intensive care four days in the hospital of the Medical University of South Carolina. He had emergency surgery, and all of the bullets were removed with the exception of one that remains lodged in his back. He had to return to the hospital when one of his wounds became infected. His wounds had to be treated with wet to dry dressings and his wife (who has had experience with medical and surgical procedures) was required to care for him by changing each dressing twice a day. His mobility was limited. He used a walker for the first two weeks, and was able finally to

    use a cane for 4 weeks. He wore a neck brace for seven weeks because the bullet fractured a bone in his spine. He has twelve (12) scars from the bullet entry and exit wounds as well as one long vertical scar on his stomach from the emergency surgery. It also took approximately six (6) weeks for his scaring to heal. He has a lasting impairment caused by the nerve damage he suffered in his right leg. He is and has been medicated for his pain, which is still intermittently present. He has also suffered from other issues as a result of his injuries and has flashbacks. Loud bangs and slamming doors causes an instant reaction. He also instructs his children about never letting people know where they were from and why they now live where they live. For continued safety, he does not open up with the people with whom he works. This fear has had other impacts. For instance, he did to a rehabilitation facility because he was afraid that he would be identified or seen by others. There were financial ramifications as well. He continues to pay over $25,000 in medical bills (he was denied temporary Medicaid and lacked insurance). Therefore, **Ballard's** attempted murder resulted in direct, continuing, and egregious health issues, and ongoing financial issues, social issues, safety issues, and emotional issues.

  h. Finally, **Ballard's** Guideline Offense Level is actually 46 and his real range is life plus 120 months. The sentencing table tops out at Offense Level 43. As noted in Chapter 5, Part A (comment n.2), in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43. In determining whether to vary from the life sentence provided for a **Ballard's** offense level of 43, the Court should consider that his actual offense level was three levels above the top of the sentencing table. In this case, **Ballard** has earned the sentence he faces.

The United States of America respectfully submits that these factors, the Guidelines, and its policy statements and the application notes, all suggest that the life sentence is appropriate in this case.

Respectfully submitted,

BETH DRAKE
ACTING UNITED STATES ATTORNEY

By: s/*Sean Kittrell*
Sean Kittrell (#6032)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina, 29402
Sean.Kittrell@usdoj.gov
(843) 727-4381

By: s/Julius N. Richardson
Julius N. Richardson (#9823)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Jay.N.Richardson@usdoj.gov
(803) 929-3000

Peter T. Phillips
Special Assistant United States Attorney

Charleston, South Carolina
June 20, 2016