**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4696

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

MARTIN LOUIS BALLARD,

    Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Margaret B. Seymour, Senior District Judge. (2:12-cr-00232-MBS-14)

Submitted: February 26, 2018    Decided: March 15, 2018

Before KING and FLOYD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Charles R. Brewer, Asheville, North Carolina, for Appellant. Beth Drake, United States Attorney, Julius N. Richardson, Sean Kittrell, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a bench trial, Martin Louis Ballard was convicted of numerous charges related to drug trafficking and murder for hire conspiracies. The district court sentenced Ballard to life imprisonment. Ballard appeals, asserting several challenges to his convictions. For the reasons that follow, we affirm.

In his first claim on appeal, Ballard argues that the pretrial seizure of his business bank account interfered with his Sixth Amendment right to select counsel of his own choosing. The Sixth Amendment preserves a defendant's "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). Although a defendant does not have a Sixth Amendment right to use tainted, forfeitable assets to hire counsel of his choice, *id*. at 631, "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment," *Luis v. United States*, 136 S. Ct. 1083, 1088 (2016).

We need not resolve whether the funds in question were tainted because the seizure did not affect Ballard's choice of counsel. Ballard initially retained private counsel. After his assets were seized and he could no longer pay counsel, the district court appointed the same attorney to continue representing Ballard under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A (2012). Although counsel twice moved to withdraw from representation prior to being appointed under the CJA, nothing in the record on appeal suggests that Ballard desired different counsel or that counsel's motions

2

were motivated by anything beyond financial considerations. Indeed, counsel's second motion sought permission to withdraw or to be appointed under the CJA, and the court granted counsel's request for court appointment. We therefore conclude that Ballard is not entitled to relief on this claim.

Next, Ballard asserts that the three-year delay between his initial accusation and trial violated his right to a speedy trial.[*] Because he raises this argument for the first time on appeal, we review for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993); *see also Barker v. Wingo*, 407 U.S. 514, 528 (1972) (holding that defendant who fails to demand speedy trial does not forever waive that constitutional right). To assess whether a pretrial delay violates the Sixth Amendment's speedy trial guarantee, we balance four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. Although the first factor—the length of the delay—weighs in favor of Ballard, *see Doggett v. United States*, 505 U.S. 647, 651-52 & n.1 (1992), the remaining factors favor the Government.

With respect to the second *Barker* factor, "[t]he reasons for a trial delay should be characterized as either valid, improper, or neutral." *United States v. Hall*, 551 F.3d 257,

---

[*] Although Ballard's statement of issues asserts claims under both the Speedy Trial Act and the Sixth Amendment, the argument section of Ballard's brief does not put forth an argument under the Speedy Trial Act. Consequently, Ballard has forfeited any challenge based on his statutory speedy trial rights. *See United States v. White*, 836 F.3d 437, 443 (4th Cir. 2016) (noting that this court generally "consider[s] contentions not raised in the argument section of the opening brief [to be] abandoned" (internal quotation marks omitted; second alteration in original)).

3

272 (4th Cir. 2009). "Deliberate delay to hamper the defense weighs heavily against the prosecution," while "delay caused by the defense weighs against the defendant." *Vermont v. Brillon,* 556 U.S. 81, 90 (2009) (internal quotation marks omitted). As for the delay in this case between the initial indictment in March 2012 and Ballard's February 2014 arrest for the attempted murder of his coconspirator, Ivory Brothers, this was a complex drug trafficking conspiracy case involving numerous defendants charged in multiple counts. During this time, the delay resulted from the multitude of motions filed by all parties, including Ballard, and continuances. We deem the delay during this period to be neutral. Between the attempted murder and trial, however, Ballard's own criminal conduct, namely seeking to obstruct justice by conspiring to have a key witness killed, was the primary cause for delay. Consequently, we conclude that, on balance, this factor weighs against Ballard.

The third factor weighs heavily against Ballard because he failed to assert his right to a speedy trial in the district court. *See Barker*, 407 U.S. at 532 ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."). Ballard concedes that he filed no formal speedy trial motions in the district court, but he argues that his objections to continuances should be construed as objections on constitutional speedy trial right grounds. Additionally, Ballard claims that a pro se letter he sent to the court is tantamount to a speedy trial motion. While Ballard's letter expressed a desire to have his case heard, the letter itself requested reinstatement of Ballard's bond, citing health reasons and a need to work to generate income. Merely expressing a preference to have a case heard sooner rather than later does not amount to

4

the assertion of a speedy trial right. *See United States v. Thomas*, 55 F.3d 144, 150 (4th Cir. 1995).

Lastly, Ballard has made no showing of prejudice; thus the final *Barker* factor also weighs in favor of the Government. Although Ballard claims that his incarceration limited his ability to prepare for his defense, he fails to show how a faster trial would have avoided this purported hardship. Similarly, his conclusory claim that his inability to earn a living hampered his defense is unsupported by any specifics, and, even when he no longer had funds to pay for an attorney, his retained counsel became court-appointed CJA counsel. Finally, Ballard's generalized claims of anxiety are insufficient to establish prejudice. Having balanced the *Barker* factors, we conclude that the delay did not contravene Ballard's constitutional right to a speedy trial.

Next, Ballard claims that he was denied effective assistance of counsel because, on the first day of trial, defense counsel remarked, incorrectly, that Ballard potentially faced a mandatory life sentence if convicted. Unless an attorney's ineffectiveness conclusively appears from the record, ineffective assistance claims generally are not cognizable on direct appeal. *United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008). Instead, such claims should be raised in a motion pursuant to 28 U.S.C. § 2255 (2012), in order to permit sufficient development of the record. We conclude that ineffective assistance of counsel does not conclusively appear on the face of the record, and, hence, this claim is not cognizable on direct appeal.

Ballard also challenges the district court's admission of the testimony of several cooperating witnesses who interpreted slang or code that Ballard used. Four cooperating

5

witnesses interpreted, without objection, Ballard's cryptic statements in conversations they had had with Ballard addressing the drug trade as well as the hit on Brothers. A fifth cooperating witness, who listened in real time to recorded telephone calls that he arranged between Ballard and third parties, also testified for the Government, interpreting what Ballard meant in recorded telephone conversations pertaining to the hit on Brothers.

Rule 701 of the Federal Rules of Evidence permits lay opinion testimony as long as it is based on the witness' own perception, is helpful to the jury in understanding facts at issue, and is "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c). "[A] witness's understanding of what the defendant meant by certain statements is permissible lay testimony, so long as the witness's understanding is predicated on his knowledge and participation in the conversation." *United States v. Hassan*, 742 F.3d 104, 136 (4th Cir. 2014). Here, four of the five cooperating witnesses actively participated in the conversations with Ballard. As for the fifth cooperating witness, while he may not have spoken, he placed the calls and listened in real time to the conversations about which he testified. We conclude that the district court did not err in admitting these witnesses' lay testimony.

Next, Ballard argues that the district court should have excluded testimony about statements made by Jimmie Harris, the man who carried out the attempted hit on Brothers. When Harris refused to testify, the court permitted the Government to call other witnesses regarding statements Harris made to them in jail, holding that the statements were admissible under Fed. R. Evid. 804(b)(3) as statements against penal

6

interest. Ballard claims that the introduction of Harris' statements through the testimony of other witnesses violated his constitutional right to confront witnesses.

The Sixth Amendment's Confrontation Clause "bars the admission of 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *United States v. Dargan*, 738 F.3d 643, 650 (4th Cir. 2013) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). "Only 'testimonial' statements are excludable under the Sixth Amendment's Confrontation Clause . . . , and we have held that statements by one prisoner to another are 'clearly nontestimonial.'" *United States v. Moore*, 810 F.3d 932, 939 (4th Cir. 2016) (internal citations omitted). Therefore, the court's admission of testimony about statements Harris made to others while in jail did not violate Ballard's rights under the Confrontation Clause.

Finally, Ballard argues that his due process rights were violated when the trial court repeatedly indicated it had not heard or comprehended statements made during the trial. The examples cited by Ballard as shortfalls instead demonstrate that the judge was paying close attention and was fully engaged in the proceedings and that his questions reflected his efforts to ensure that the record was clear with regard to exhibits the parties were introducing, questions the parties were asking and witnesses' responses, and the nature of various objections. Ballard's claim of a due process violation is meritless.

Accordingly, we affirm the criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*